Good morning, Your Honor. May it please the Court, my name is Bob Kelleher, and I actually represent Charles Stevenson. We flipped a coin, and I'm going to go first. Co-counsel, Mr. Sams, and I have elected to split the time approximately in half, and I'd like to reserve about three minutes for rebuttal. Your Honor, I've raised two issues on appeal, and the first one is insufficiency of the evidence. The other one is the dismissed counts that were used as relevant conduct. And by the way, I was trial counsel as well. The insufficient evidence argument is based on, in the record, the only evidence that the jury had that my client, Charles Stevenson, was the supplier of the methamphetamine boils down to one phone call that the confidential informant made to a phone number registered to a man named Jose Cano, who testified that he did not ever answer the phone and did not ever give the phone to my client. This confidential informant told the jury that, admitted that he barely knew Charles Stevenson, had only seen him a few times, and had only heard his voice to say hi. And yet, he testified that he recognized this person on the other end of the line as Charles Stevenson. And in my mind, Your Honor, that is not sufficient evidence for a jury to convict. Oh, was there any circumstantial evidence? The circumstantial evidence, Your Honor, was that the confidential informant asked for Fat Boy, and there was some evidence that that was a nickname that my client used on the street. But didn't the co-defendant sometime tell the C.I., the confidential informant, that your client was a supplier? Well, as the evidence came out, Your Honor, Malia Manoraska talked about my dude, my man, my boyfriend. But according to law enforcement testimony, she never once referred to my dude as Fat Boy or Charles Stevenson. And so there was a lot of ambiguity about who her boyfriend was. Was there any excuse that they had a relationship? No. No, they had been in a relationship, kind of an off-and-on relationship, Your Honor. I think there was actually some testimony, if I recall, that she had a relationship with the confidential informant also, if I recall the trial testimony, Your Honor. And not only was there that slim nexus to Charles Stevenson, law enforcement themselves testified that they kept the house under surveillance where Malia Manoraska was residing, and they weren't even sure that Charles Stevenson was in there. They didn't see him come in or out. And he may not even have been in Montana for all they knew, Your Honor. And the confidential informant even testified that he wasn't sure when Charles Stevenson came to Montana. It's a very nebulous, very attenuated nexus. And my position, Your Honor, is that the jury basically must have reached a decision on passion and prejudice because there was simply not enough evidence for them to convict my client. There were four hand-to-hand sales between Malia Manoraska and the undercover agents, including law enforcement, and at no time was my client present for any of those sales. Unless there's any further questions on that issue, I'd like to turn to the issue of the dismissed counts. In this day and age of sentencing guidelines, which are creatures of the law, I believe it's still fair to say that the ancient principles of equity also apply. And even though, legally speaking, a court may sentence a defendant for what's referred to as relevant conduct, that equitable principles should also apply. The law should be tempered with equity. And my argument, Your Honors, is that the government, on its own volition, moved to dismiss these three counts, which amounted to three different sales of methamphetamine. And yet, at sentencing, the government argued that those three dismissed counts should be brought in as relevant conduct. Nothing new about that. No. We do that all the time. The government does that all the time. In fact, the Supreme Court said it's okay, isn't it? Yeah. Well, as I read the Watts decision, the Watts decision talks about acquitted conduct, but I don't believe it talks specifically about dismissed conduct. Well, don't you think acquitted conduct is an even stronger case than dismissed conduct? Well, my argument, Your Honors, was that because we did not have a chance to defend against the dismissed counts, that there was a detrimental reliance there on equitable estoppel. It doesn't matter, because even if you did, you know, a terrific job and you got an acquittal, you could still use it. I thought about that, Your Honor. They could have come in as acquitted conduct, but the court, the sentencing court, which was also the trial court, stated at sentencing that he was under the impression, based on the testimony, that Charles Stevenson was the supplier of all of the methamphetamine. And conceivably, had we mounted a defense against those three dismissed counts, we could have disabused the judge of that notion conceivably, even though it was acquitted. That's all I have, then. At this time, I'll defer to my co-counsel. Thank you. Thank you. May it please the Court. My name is Jack Sands, and I am representing Malie Manraxa in this case. The issues that I bring before the Court are two, essentially. We are arguing that certain evidence was introduced improperly, and we are arguing that certain instructions were improperly written and given to the jury. With regard to the evidence that was introduced, there was evidence introduced concerning sales of ecstasy. This case was basically a case involving the sale of methamphetamine. Malie Manraxa's view was that she admitted to selling methamphetamine on four separate occasions. Her defense was solely the issue of entrapment. She alleged that she was not guilty of the conspiracy count because the only other person involved was Charles Stevenson and that Charles Stevenson didn't know anything about any of these sales that she was involved with. The question, then, is about the ecstasy tapes, which was an entirely unrelated investigation, an entirely unrelated case. In our discovery request, we specifically asked if the government, if there was any other statements of Malie Manraxa in any other investigations that they had been involved with that involved the sale of drugs. The government indicated in its discovery responses that there was none. However, in the discovery that was provided, there was some reference in heavily redacted statements to ecstasy sales. Therefore, we made a motion to supplement discovery, asking for whatever those statements may have said about ecstasy sales. The government, again, refused to provide it. We made a motion to compel. The court held a hearing on it. The motion to compel was denied because the government stated explicitly to the trial court that those ecstasy sales were only remotely related or related not at all to Manraxa and that they did not intend to use them at trial. They didn't intend to use them as part of their affirmative case. Yes, sir. Did they? As part of their affirmative case? They did not use it as a part of their affirmative case. They elicited information from Manraxa as to whether or not she had been involved in in these drugs. And they said that they were introducing this for impeachment purposes. However, Manraxa said from the very beginning in her initial statement, her counsel's initial statement, that she was involved in the sale of drugs. The information that the government relies on in her statement is her representations that she had not been involved in the sale of drugs prior to the time that she met the confidential informant. And that is the sole context in which they attempted to impeach her. And it's not proper impeachment because it was beyond the scope of the direct examination, because it was information that the defendant had specifically requested pursuant to Rule 19A, and because it was 404B evidence that the government had provided no notice of. The fact that Malia Manraxa has stated that she was not involved in the sale of drugs prior to the time that she'd met the confidential informant does not provide any basis whatsoever for an impeachment concerning ecstasy sales that may have occurred after she met the confidential informant, particularly when the government has specifically represented that those ecstasy sales did not involve Manraxa and would not be used at court. The second issue concerns income tax records of Charles Stevenson. The defendant, again, specifically asked for any information that the government had regarding tax records of herself or a co-defendant. In their cross-examination of Malia Manraxa, the government asked her if she was supporting him or he was supporting her, and she answered that, that he was basically supporting her while she was going to college in California. On that basis, they introduced the evidence of income tax records of Charles Stevenson, income tax records that they had not provided to us and which was not directly related to her direct examination in any way and only remotely related to questions that they'd asked her on cross-examination, because she'd asked about his earnings, not whether or not he'd filed income tax returns. The third evidentiary issue concerned the probation officer's file. And again, she had asked for this in initial discovery. She'd asked for it in supplemental discovery. She made a motion to compel, and that motion to compel was denied in a hearing held by the district court. This concerns the probation officer's supervision of the confidential informant, Avery Calica. Because the state public defense – a state – was it the Federal or a state probation officer? It was a state probation officer, Your Honor. However, he was involved with a joint city-county federal task force in the investigation of Manraska and in a number of other areas. Okay. The probation officer testified. He brought his probation file with him to the courtroom. He referred to it. And we were not allowed – the defense was not allowed to inspect that file or to look at that file in any manner, shape, or form. The judge at a conference outside – in chamber's conference indicated that he wanted the probation officer to go through the file and to tell the defense what was in it and to answer their questions about it. No meaningful information was provided with regard to the probation file in that conference. This is a clear violation of Rule 612, which provides that if a witness is allowed to refresh his memory by reviewing a file, the adverse party has a right to inspect it and look at it and can introduce relevant portions. That was not permitted in this case. In that chamber's affair meeting, didn't the judge look at the file? Yes, sir. He looked at the file on camera. Let's assume for a moment that we would agree with you that any one of these discovery or evidentiary issues that you have identified here. Yes, sir. Would you be so kind as to explain what the prejudice would be here in light of the record? Wasn't it just harmless? Well, first of all – Harmless error. I don't think it's harmless error. The government hasn't argued that. And I think that these issues go directly to the issue of predisposition, which is an essential part of the whole defense of entrapment. The issue of whether or not she was involved with ecstasy sales. What kind of inducements the government was giving to the confidential informant in order to provide his cooperation in this case. Those kinds of issues are the only issues really involved in entrapment. And by excluding this important information, in effect, Manrasco was not able to adequately develop her defense of entrapment. The next issues involve the jury instructions concerning conspiracy and the definition of knowingly. Our contention is that the definition of knowingly by departing from the Ninth Circuit Court of Appeals model instructions and by allowing the evidence of failure to act to be equivalent to knowingly, that was error. It looks like somebody just made a typographical error. Well, I think it's much more subtle than that. Didn't the judge ask? Isn't this the same? Didn't the judge ask? What about this? And the government said, oh, this is just the model rule. Of course, it wasn't. And the model rule was presented to the judge as one that he could offer. And the final issue on instructions is the definition of conspiracy in which they involved incorporated aiding and abetting in the definition of conspiracy. For the reasons outlined in my brief, I think that's error as well. Thank you very much. Thank you. May it please the Court. Good morning, Your Honors. My name is Jim Sikora. I'm an assistant United States attorney from the District of Montana. I was not trial counsel. Shelly Hicks was an assistant in our office. And since we've gone to bigger and better things, is now an assistant in the great state of Texas, Houston, doing drug cases there. So I am here today, Your Honors. You're in a very comfortable country. I'm sorry, Your Honor? Leaving the comfortable country. Well, family situation, she had relations down there. She was able to laterally transfer, and it was good for her, Your Honor. Your Honors, if I may address the issues that specifically of Mr. Kelleher in relation to Stevenson. I have a different view of the facts regarding the sufficiency of the evidence. We have prior to the confidential informant being involved in placing calls in early December of 2000, he has a conversation with Malia Ranrasca, and she tells him at that time that her boyfriend has come up, has drugs, has plenty of drugs, has lots of drugs. That, during the testimony of not only Malia Ranrasca but other people, indicate that Malia Ranrasca and co-defendant Charles Stevenson had a six-year relationship. In fact, they're engaged to be married. Contrary to what counsel read in the record, I believe there's a specific question, even on cross-examination when Ms. Hicks says that you want to basically want to tell the jury that you were threatened by this confidential informant, yet you had a relationship for six years and engaged to the co-defendant, but you didn't tell him about this. And this goes to the issue of predisposition, whether or not the informant had forced Malia Ranrasca to do these criminal actions. And I'm going to jump back over to the Ranrasca issue then, because when you're talking about that, you're talking about Mr. Sands argues for Malia Ranrasca says our entire defense was she had no predisposition to commit these crimes and stood up in the opening argument and told the jury that after the limited period of time from December of 2000, January of 2001, after that she was basically clean as the snow and was not involved in any of this. While the tape, which was introduced into evidence, occurred in April of 2001, within that six-month period of time. Was that ecstasy? That was the ecstasy tape. Yes, it was, Your Honor. But counsel not only said that in the opening argument, but he also said during the direct examination, asked Malia Ranrasca, have you ever distributed hard drugs? And she said no. And then later on in the direct examination, have you ever been involved in distributing methamphetamine or cocaine or other narcotics since that date? That limited time date of December 2000, January 2001. No, I have not. So when we sought to put in the ecstasy tape, which we had agreed to in the pretrial hearings not to because it was 404B, because it was ecstasy, it didn't meet the challenge, didn't meet the test, we had three specific instances, and the trial court found it did not abuse its discretion. Counsel, you've opened the door. The United States is entitled to put this in. When Mr. Kelleher talks about equity, the question is, are you allowed to present to the jury that your claim is driven so, in fact, you are not? Well, when you read that call, you can read it in different ways, the way in which the questioning took place. For example, part of it begins, now in November of 2000, had you ever been arrested before? No, I had not. Had you ever used hard drugs, such as those that are the subject of this case? No, I had never. Had you ever distributed hard drugs? No. Have you? Had you ever? Not have. Had you ever? But then the next line comes, had. Have you ever? Yes. And the third question is, have you, which is all-encompassing. And then buttressing it with that other portion about have you ever distributed hard drugs, cocaine and so on. Plus the opening statement. He's laying the foundation. This is what we're going to show you, ladies and gentlemen, that it was disinformant and my client's involvement is only during the time of disinformant in December and January, which is not true, which is incorrect, Your Honor. And that's why we believe that the Court did not abuse its discretion. It's one of those things that turned from an analysis of 404B pretrial to all of a sudden a impeachment by contradictory testimony or evidence at the time of trial. And we believe that the Court made the correct call based upon the facts of the trial at that time, Your Honor. I didn't mean to divert you from your presentation regarding Mr. Stevenson. I'm sorry, Your Honor. You're talking about the weight of the evidence. Yes. Yes. Mr. Stevenson was – if I could just have one moment. I have my new bifocals, and I found them quite interesting. And the ferry also, Your Honor, when we hit a few waves this morning, which we're not used to in Montana. We had the phone calls in early December wherein Malie Manraska tells the informant he had lots of drugs. We then have recorded phone calls setting up the bias in which Malie Manraska, in fact, wired hand-to-hand by – gives it to the informant. Four different occasions. However, we then have phone calls on December 26th wherein, and during the testimony, the informant says, I've met Stevenson, I've talked to him before, identifies the voice on the tape as him, also addresses him as Fat Boy, and there's other phone calls. There's actually two calls on December 26th of 2000. Asked whether or not he got any stuff. Said he needed at least five of them referring to ounces, and my girl will be back. His girl at that time was Malie Manraska. Second call, they discuss prices, the 925, the 950. There's no question he's talking to Fat Boy. He's calling their home where they're staying. Malie Manraska and Stevenson. Then shortly thereafter, the informant talks to co-defendant Malie Manraska. It's not what's happening. It's, hey, I talked to my dude. The price is 950. You want five of them. It's clear they're talking about five ounces of methamphetamine. The evidence in this case is overwhelming as to the conspiracy to resubmit, Your Honor. In addition to that, the previous discussion with Malie Manraska said, cool, I got it. Referring to the dope, I got plenty. Fat Boy brought it up here. And the evidence showed that he'd been in California and brought it up. Clearly, the conspiracy was there not only prior to the informant working with law enforcement, but those tapes supplemented and showed beyond a reasonable doubt and clearly, overwhelmingly, there was sufficient evidence to establish that conspiracy, Your Honor. Regarding the issue of the tape, I've already talked about that and have cited the cases regarding the impeachment by contradiction, Your Honors. Please. Let me talk about two other issues, the tax return and the probation file. Probation file is a state probation. The informant was on state probation. I say it's a much ado about nothing. Basically, there was a lot of going back and forth whether he looked at the file or not. What the state probation officer testified to is the confidential informant was on probation. He had a dirty urine. He had a couple of false dirty urines. And I allowed him to work undercover. Mr. Sands became confused on behalf of Malia Manrasca because we had sent out an NCIC report which detailed various police contacts, some of which were not in the probation file. And he was trying to show that we were giving benefits to the defendant by somehow. If there was a misdemeanor traffic stop in the NCIC report, he wanted to see whether or not it was in the probation file. It wasn't there. They're not clairvoyant. They don't – and it's clear in the testimony. They didn't know of a lot of this information. There was a judge prior to trial and at a hearing specifically reviewed the entire file. Not during the course of trial, but even in the hearing beforehand, and the hearing was had a few months earlier, he reviewed it for the benefit, for Brady material. He said there's no benefit. I can't find anything here. Then at the time of trial, it became an issue as to whether or not there are other benefits. Went in, took a look at it. Counsel said I didn't learn anything new that I already didn't know by the government divulging it previously, including payments of $16,000 total for work not only in this case, but other cases. So the tax records is an issue. That discovery issue, if I would have been trying the case, I don't know whether or not I would have tried to put it in or not. But when you read that testimony, it's just – Ms. Hicks was asking, I suppose that you supported him. And the defendant, surprising, you can see, came back and said, no, actually, he supported me. And Ms. Hicks is right in our supplemental exercise. She said, really? Did he have a job? She said he had several jobs. So it goes to the point where the United States, on the inside, you get to test the credibility of that person that's testifying. We put those tax returns on to show that he hadn't filed for five years, and there's one year that he had filed for a very minuscule amount. It went to the credibility. The United States submits in this case, Your Honors, that the evidence was overwhelming. These discovery issues are harmless. The evidence clearly shows, beyond a reasonable doubt, that Malina Rask was involved with Charles Stevenson in this conspiracy during that period of time to distribute the methamphetamine. Well, he just says it relates to – all this relates to her ability to step through, to take advantage of an entrapment defense. Well, I said, if you look at the – and it's in the excerpts of record, Your Honor. When you look at the hearing about this issue, counsel reads the redacted 302, the FBI, talking about that the informant called blank. They were leaving about the other investigation, the other defendant's name on it. But it was clearly she was there as a sale of ecstasy, they were talking about. It's not like we're sandbagging. It didn't give them anything. They had that. They discussed it in the pretrial hearing. We just said we weren't going to give up the defendant, we weren't going to use it, and it's not relevant. If in fact at that time, I can't remember the exact time, I think it was a couple months before the pretrial hearings, that counsel knew that we had something in that manner which was involving his client selling ecstasy. And I think he almost invited it when that opening statement and the questioning of her at the time, that time period, if she was ever involved in those distributions or any drugs. And I think it was only fair. It's fair for the goose. It's fair for the gander, Your Honor, is her position. Regarding the knowingly, I guess I still don't understand the import of that. When you look at the standard Ninth Circuit, you can use one of two phrases. The judge took one of the phrases. Counsel suggests that's wrong. And I think that both of them had the same meaning and the same import in this particular case, Your Honors. Also, the aiding and abetting issue regarding conspiracy. You set it forth in the brief. This is not a case where it's just charged as conspiracy. The grand jury charged it with conspiracy and aiding and abetting. And the grand jury charged not only Malia Manraska and also Charles Stevenson, but others known and unknown. And the evidence in this case shows that he brought the dope up from California. Clearly, there was a conspiracy. There may have been other people not identified. Therefore, the jury was entitled to have those instructions to consider. Mr. Sands suggests that the Court confused the jury. There was a separate conspiracy instruction, separate aiding and abetting. You look at the instructions as a whole in the United States Submit, there was no error in this case, Your Honors. If this Court has other questions, I would rely upon the brief. Thank you, Your Honor. All right. Thank you, Mr. Sikora. Mr. Ruben. Very briefly, Your Honor, on the issue of the sufficiency of the evidence, the confidential informant simply was not in a position to identify Charles Stevenson, acknowledging that he had only heard his voice once, had only met him once or twice, and had called a phone number that was not associated with Charles Stevenson. It's totally circumstantial. And there was overwhelming evidence that Malia Madraska was involved. Whether or not she was entrapped is a separate issue. But physically, she did consummate these drug deals. And there was no evidence that Charles Stevenson was there, even in the background. And therefore, there was insufficient evidence. Thank you. With regard to the initial question that was asked of Malia Madraska, with regard to whether or not she had used any hard drugs, the context quoted by the judge there is clearly that she was being asked about what had occurred prior to November of 2000 when she first met the confidential informant. Otherwise, her initial statement that she acknowledged selling drugs from the beginning would have made absolutely no sense. Mr. Skor also referred to a statement that she had made with regard to the fact that after she'd met Avery Colicutt, after the proceedings with him were concluded, she hadn't been involved with selling methamphetamine, cocaine, or narcotics. That question was asked, but it had nothing to do with ecstasy. And the issue here concerns the ecstasy tapes. Again, with regard to the income tax records, that information with regard to Charles Stevenson's income was not information that was solicited on direct examination. It was information solicited by the government on cross-examination. And finally, with regard to aiding and abetting as mixing that in with conspiracy, our contention here is that that not that aiding and abetting that one cannot aid and abet a conspiracy, but simply that by mixing the two concepts within the definition of conspiracy is misleading to the jury, particularly in a case where the evidence against Charles Stevenson was as weak as it was in this case. Thank you very much. All right. Thank you. We thank all counsel in this case. Case is now submitted for decision.
judges: Reavley , Tashima, Paez